WILLIAM F. HUTCHINSON, Appellant, v. JOHN F. DONOVAN, Respondent.

St. Louis Court of Appeals, November 1, 1898.

Hotel Employees: ACTS OF. In the case at bar the acts of the hotel employees were not within the scope of their authority or duty, and could not bind defendant and he should not be held to answer for the loss of plaintiff's money by theft.

*Appeal from the St. Louis City Circuit Court.*—HON. JOHN A. TALTY, Judge.

AFFIRMED.

JOHN F. SHEPLEY for appellant.

A demurrer to the evidence admits every fact which a jury might find, and every inference of fact which a jury might legitimately make, if the evidence were before them. Franke v. St. Louis, 110 Mo. 516. The transaction in question was not a bailment, for in order to constitute a bailment the parties must have intended that there should have been a return or delivery of the identical thing bailed. Coleman v. Lipscomb, 18 Mo. App. 443. "Hence if the terms of the undertaking contemplated returning money instead, or any other equivalent, the transaction constitutes not a bailment, but a sale." Schouler on Bailments [1 Ed.], p. 5. The indorsement and delivery of the draft by the appellant to respondent's servant to be cashed constituted a sale to respondent, and the deposit of the draft in the bank by the defendant's attorney-in-fact,

Durkin, and the crediting of the amount thereof to the respondent's account, constituted a sale of the draft to the bank. Kavanaugh v. Bank, 59 Mo. App. 54; Dymock v. Bank, 67 Mo. App. 97. It is a well settled principle, by keeping the fruits of an unauthorized act of his agent, after knowledge of fact, ratifies the act and makes it his own. He is not at the same time entitled to repudiate the act and keep the fruits of it. Davis v. Krum, 12 Mo. App. 279–287; Meyer v. Old, 57 Mo. 639–645.

ALFRED A. PAXSON for respondent.

The acts of the hotel employees, in their efforts to accommodate plaintiff in the matter of getting his check cashed, were clearly not within the scope of their authority or duty and could not bind defendant, and therefore the demurrer to the evidence was properly sustained. Perkins v. Boothby, 71 Mo. 91; Brockway v. Mullin, 4 N. J. 448; s. c., 50 Am. Rep. 442; Campbell v. Hastings, 29 Atk. 512; Sewanee Mining Co. v. McCall, 3 Head (Tenn.), 919; Rossiter v. Rossiter, 8 Wend. (N. Y.) 494; s. c., 24 Am. Dec. 62; Gulick v. Grover, 33 N. J. L. 463; Bank v. Johnson, 3 Rich (S. Car.) 42; Tucker v. Railroad, 54 Mo. loc. cit. 181; Brown v. Railroad, 67 Mo. 122; Mayberry v. Railroad, 75 Mo. 492; Atlee v. Fink, 75 Mo. 100; s. c., 42 Am. Rep. 385.

BLAND, P. J.—Since this appeal was taken John F. Donovan has died, and the suit has been revived in the name of his administratrix Mrs. John F. Donovan. The suit is for the alleged conversion by John F. Donovan of a draft for $800, dated May 20, 1897, drawn on the Globe National Bank of Chicago by the Niccolet National Bank of Minneapolis, payable to the order of plaintiff William F. Hutchinson. The draft

was indorsed by Hutchinson in blank, by John F.
Donovan "pay to the order of the Boatman's Bank of St.
Louis"; by the Boatman's Bank, "pay to the order of
the Northwestern National Bank," and by the latter
bank—"pay through the Chicago Clearing House."
It was admitted on the trial by defendant that the
draft was indorsed by the attorney-in-fact of John F.
Donovan and was deposited to the latter's account in
the Boatman's Bank and by it passed to his credit, and
that the draft was paid through the Chicago Clearing
House. Donovan was the proprietor of the Lindell
Hotel in the city of St. Louis, but was absent in Europe
when the draft was deposited to his credit in the Boat-
man's Bank. Hutchinson the plaintiff testified that
he went to A. G. Lewis, room clerk at the Lindell
Hotel, and asked him to cash the draft for him; that
Lewis took him to the bank to identify him, but the
bank would not cash the draft, that Lewis then said to
him: "let me have it and I will get the cashier to cash
it for you;" that he then indorsed the draft and gave
it to Lewis; that he had never received the money, nor
the draft back; that he supposed Lewis was the mana-
ger of the hotel; that the hotel had cashed drafts for
him prior to this time in payment of his bills due the
hotel; that he did not know that Durkin was Dono-
van's manager; that nobody told him that Lewis was
the manager of the hotel, but that he seemed to have
access to all the books and to the safe; that Lewis sent
word to him that the money was there (at hotel) for
him; that the next morning after receiving the word,
he went to the hotel for his money, and they told him
it had been put in an envelope in the safe for him,
and that Stewart, the night clerk, had gone and the
money was also gone. A. G. Lewis testified: that he
was room clerk at the Lindell Hotel, subject to the
orders of the manager; that Robert W. Durkin was

manager in the absence of Donovan; that he asked the cashier of the hotel to get the cash on the draft for Hutchinson; that Van Hafton, the cashier, did get the money and gave it to him; that he put it in an envelope with Hutchinson's name on it, kept it in his pocket until night, and then put it in the safe; that he sent word to Hutchinson that he had the money for him; the next morning after he put the package of money in the safe he was notified that the night clerk was missing, and that when he got into the safe he found that Hutchinson's money was gone.

EVIDENCE.

Van Hafton, the cashier of the hotel testified as follows:

" I was private bookkeeper of the hotel when Hutchinson gave the draft to be cashed; I knew Mr. Hutchinson by sight; on that day before I went to the bank Mr. Lewis came to me with a draft for $800, indorsed by Mr. Hutchinson, and asked me if I would get the money for him; I said I would. As I didn't have the amount of money in my cash drawer I would have to draw a check, so I deposited the draft and drew a check at the same time for $800; after I had made my deposit I went to the paying teller of the bank, drew out the $800 and handed it over to Mr. Lewis. The checks reads as follows: "St. Louis, May 24, 1897. Boatman's Bank, pay to the order of currency $800. John F. Donovan, by R. W. Durkin, attorney." I made out the check and got Mr. Durkin to sign it, I told him it was for exchange; that is, for currency to pay a draft of Mr. Hutchinson's;  *  *  * that I wanted to draw that amount of money to pay for a draft which I had received, and which I deposited, or which I was going to deposit." Robert W. Durkin testified as follows:

"I was acting as manager and private secretary for Mr. Donovan; I had a power of attorney from him; Mr. Van Hafton asked me to sign a check to pay a a draft on Chicago; I signed the check in the usual way; he said he wanted that money to cash a draft for the accommodation of somebody; I had general power from Mr. Donovan while he was away to superintend the house, to look after the departments and to sign checks." Van Hafton was recalled, and testified that he told Durkin that he was drawing the money for Hutchinson, and explained that he wanted a draft cashed; did not tell him that he got the draft from Lewis. Hutchinson was not a guest of the hotel at this time, but had been some time prior.    The court gave a peremptory instruction to the jury to find for defendant, whereupon plaintiff took a nonsuit with leave to move to set same aside. Within four days thereafter plaintiff filed his motion to set aside the nonsuit—this the court overruled, and plaintiff appealed.

To state the evidence is to state the plaintiff out of court.    His contention is, that because the draft was deposited to the credit of Donovan he (Donovan) is liable; the deposit being, as he contends, a conversion of a draft.    Every transaction and act should be interpreted by the contemporaneous facts and circumstances explanatory of the transaction or act in question.    So interpreting this deposit it appears there was no purpose or intent by the deposit of the draft by Donovan's credit to increase the credit side of his account with the bank, nor did the deposit have that effect, for contemporaneously with the deposit, a check was drawn against it and the cash was paid over and handed to Lewis for the plaintiff.    The method chosen was a safe and convenient way of collecting the draft, and was not different in purpose or in effect, than would have been the case had Lewis after receiving the draft with

Hutchinson's indorsement, gone in person to the bank and cashed it. The transaction was not for Donovan's benefit, was not on his account, and was entirely aside from any business connected with or pertaining to the business of the hotel. Donovan was a stranger to the transaction, did not profit by it, nor could he have done so. Under no view of the evidence does it appear that any of Donovan's agents in this transaction were acting for him, and he should not be held to answer for the loss of plaintiff's money by theft. Judgment affirmed. All concur.